# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| LUMINATI NETWORKS LTD. | |
|         Plaintiff, | |
|     v. | Case No. |
| BI SCIENCE (2009) Ltd. | **JURY TRIAL DEMANDED** |
|         Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Pursuant to Fed. R. Civ. Pro. 15(a)(1)(B), Plaintiff, Luminati Networks Ltd. ("Luminati") brings  this action under the patent laws of the United States, Title 35 of the United States Code, and makes the following allegations against BI Science (2009) Ltd., also known as BI Science Inc. ("BI Science" or "Defendant"):

### THE PARTIES

1.      Plaintiff Luminati is an Israeli company having a principal place of business at 3 Hamahshev St., Netanya 42507, ISRAEL.

2.      Upon information and belief, Defendant BI Science is an Israeli corporation headquartered at 6 Hanechoshet St., Tel Aviv, 6971070, ISRAEL.

### JURISDICTION AND VENUE

3.      This is an action for patent infringement under the patent laws of the United States of America, 35 U.S.C. § 1, *et seq*.

4.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).  BI Science has not contested subject matter jurisdiction of this Court and accepted service of process in the previously filed case of Luminati Networks, Ltd. v. BI Science Inc. (Case No. 2:19-cv-483-JRG, "First Action") still pending before this Court.

5.      This Court has personal jurisdiction over BI Science because it, directly or through its subsidiaries, divisions, groups, or distributors, has sufficient minimum contacts with this forum as a result of business conducted within the State of Texas, and/or pursuant to Fed. R. Civ. P. 4(k)(2).  On information and belief, BI Science transacts substantial business in the State of Texas, directly or through agents, including: (i) at least some of the infringement alleged herein in the United States occurring in Texas, and (ii) regularly does or solicits business in Texas, engages in other persistent courses of conduct, maintains continuous and systematic contacts within this Judicial District, purposefully avails itself of the privilege of doing business in Texas, and/or derives substantial revenue from services provided in Texas.  For example, on information and belief, BI Science utilizes software, which is, *inter alia*, the subject of the infringement alleged herein, that routes internet communications through user devices having IP addresses serving as residential proxies located in the State of Texas, as well as this Judicial District, permitting BI Science to include user devices in this Judicial District as part of BI Science's residential proxy service, which is also the subject of the First Action involving related patents already before this Court.  As a further example, on information and belief, BI Science also has customers and data center servers located in the United States and the State of Texas that are used as part of Defendant's data center proxy service which is part of the infringement alleged herein.  This Court has at least specific personal jurisdiction and/or pendant personal jurisdiction over BI Science for all asserted claims.

6.     Defendant has and continues to use, provide, sell, and offer to sell as well as import into the United States residential proxy services and data center proxy services including Geosurf residential proxy service and data center proxy service ("Accused Instrumentalities"), including through direct communication with customers including customers in the United States and, for example, through Defendant's website.  https://www.geosurf.com/.

7.     Following *Brunette Machine Works v. Kockum Industries, Inc.*, 406 U.S. 706 1972), venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b) at least because, upon information and belief, BI Science is a foreign entity.

## FACTUAL ALLEGATIONS

8.     Derry Shribman and Ofer Vilenski are the named inventors of a number of patents, including U.S. Patent Nos. 10,469,614 (Exhibit A, "'614 Patent") issued on April 9, 2019, 10,257,319 (Exhibit B, "'319 Patent") issued on November 5, 2019, U.S. Patent No. US 10,484,510 (Exhibit C, "'510 Patent") issued on November 19, 2019 and U.S. Patent No. 10,484,511 (Exhibit D, "'511 Patent")  (collectively the "Asserted Patents") issued on November 19, 2019.

9.     The '319 Patent, '510, and '511 Patents are divisionals sharing the same specification and are both titled "System Providing Faster and More Efficient Data Communication." The '614 Patent shares the same inventors with the '319 Patent, '510 and '511 Patents, but has a different specification and is titled "System and Method for Improving Communications by Using Intermediate Nodes". Luminati identifies its patents on its website at https://luminati.io/patent-marking#system-and-method-for-streaming-content-from-multiple-servers.

10.     Luminati, previously known as Luminati Ltd., previously known as Hola Network Ltd. ("Hola"), is the assignee and sole owner of the Asserted Patents and has rights to past damages.

11.     Luminati provides multiple proxy services including a residential proxy service and a data center proxy service.  Luminati's residential proxy service provides a cloud service connecting tens of millions of devices over the Internet through a proxy-based network.  Each participating device allows the network to utilize a fraction of that device's idle time for the network. Luminati also offers a data center proxy service, which includes a number of proxy servers located around the world. Luminati utilizes these network to provide proxy-based services to businesses.

12.     Since 2014, Luminati has offered proxy-based services relying on its "Residential Proxy Network" that practice one or more claims of the Asserted Patents.  Luminati permits its business customers to utilize its residential proxy network to access data over the Internet using residential IP addresses from various localities as required by the customers.  Because each of these residential proxy devices has its own residential IP address, web servers receiving requests from these proxy devices do not recognize such requests as originating from the actual user making the request.  Instead, the server identifies the request as coming from a residential device based upon the residential IP address of the proxy device.  These residential proxy devices provide businesses with a number of advantages.  For example, online retailers may anonymously use these residential proxy devices to gather information from web servers (such as for comparative pricing), businesses  may utilize these devices to test their web sites from any city in the world, and cyber security firms may employ these devices to test web sites for malicious code.

13. Prior to and separate from the technology at issue in this case, Hola provided a Virtual Private Network ("VPN") service called HolaVPN.

14. Luminati, formerly known as Hola, has a number of investor shareholders. One of these investors, iAngels Crowd Ltd. In Trust ("iAngels"), executed an Agreement to be Bound by an April 15, 2015, Amended and Restated shareholders Rights Agreement on July 14, 2015. This Agreement to be Bound was signed by Shelly Hod Moyal, founding partner of iAngels. As the representative for the shareholder iAngels, Ms. Moyal had access to Luminati confidential information and know-how. Upon information and belief, Ms. Moyal was aware of Luminati's intellectual property (including trade secrets and know-how), including the pending patent applications that resulted in the Asserted Patents.

15. Upon information and belief, as a condition for iAngels to invest in Luminati, Ms. Moyal's husband, Kfir Moyal, conducted technical due diligence at Hola on behalf of iAngels in May 2015. Upon information and belief, in this role Mr. Moyal also had access to Luminati's confidential information as well as Luminati's intellectual property (including trade secrets and know-how), including the then pending patent applications that resulted in the Asserted Patents and financial records regarding Luminati's residential proxy service. Upon information and belief, Mr. and Ms. Moyal knew of the pending patent applications that resulted in the Asserted Patents and were aware of Luminati's commercial success resulting from its residential proxy network services. Upon information and belief, Mr. Moyal did not disclose that BI Science had a residential proxy service or intended to offer a residential proxy service prior to or during the performance of due diligence on behalf of iAngels.

16. Upon information and belief, Kfir Moyal and Assaf Toval, founded BI Science in 2009. Upon information and belief, as early as October 14, 2014, Mr. Moyal approached Luminati

as a purported customer seeking information regarding Luminati's residential proxy service.  Upon information and belief, BI Science subsequently tested Luminati's residential proxy service as part of a free trial.  Upon information and belief, at some time after Mr. Moyal became aware of the patent applications that resulted in the Asserted Patents and Luminati's commercial success with its residential proxy network services, BI Science decided to provide a residential proxy service. Upon information and belief, BI Science had decided to provide this service as early as May 2017 having estimated that switching to a residential proxy service from a server-based service could dramatically reduce BI Science's ongoing server costs and provide BI Science with new revenue streams from this capability.  Upon information and belief, BI Science introduced its own residential proxy service under the "GeoSurf" brand by July 2017.

17.    Alon Ghelber, Samuel Levy, and Vadim Feldman each entered into a Personal Employment Agreement ("Employment Agreement") with Hola Networks Ltd., now known as Luminati, on December 18, 2014, March 1, 2015, and March 3, 2015 respectively.  The terms of the Employment Agreement include a confidentiality provision obligating the employee to keep in confidence Luminati's proprietary information.  The Employment Agreement also includes a non-compete clause prohibiting the employee from accepting employment with a company offering competing services within twelve months of the termination of employment with Luminati.

18.    Luminati terminated employment of Mr. Ghelber and Mr. Feldman on February 2, 2017 and February 20, 2017 respectively.  Mr. Levy terminated his employment with Luminati on February 8, 2017.  These employees had access to Luminati confidential know-how and trade secrets, including client lists, client records, client data usage, accounts receivable documents, business plans, marketing research, technical documents related to the architecture of Luminati's

residential proxy network, and related work product. Luminati's residential proxy service is intended for use in interstate or foreign commerce. Upon information and belief, BI Science subsequently hired these three individuals in 2017 within months of their termination by Luminati. Upon information and belief, BI Science hired Mr. Levy in May 2017 followed by Mr. Feldman in June 2017, which was approximately on or after BI Science decided to offer the residential proxy service. Upon information and belief, BI Science also hired Mr. Ghelber in 2017. Upon information and belief, BI Science hired these former Luminati employees despite the non-compete clause of the Employment Agreements or was willfully blind to these former Luminati employees being subject to such a provision. Upon information and belief, BI Science hired these former Luminati employees knowing them to be former Luminati employees with knowledge of Luminati's trade secrets including confidential information related to Luminati's residential proxy service. Upon information and belief, BI Science hired these former Luminati salespeople for the purposes of selling BI Science's competing "Geosurf" residential proxy service, including in Texas and the United States. Upon information and belief, the former Luminati employees have touted their experience with Luminati as part of their approach to Luminati clients offering the "GeoSurf" service as an alternative in competition with Luminati's residential proxy service. Upon information and belief, Luminati's former employees employed Luminati's confidential trade secrets on behalf of BI Science in furtherance of the competing "Geosurf" residential proxy service. Upon information and belief, Luminati lost Texas and United States customers for its residential proxy service and associated revenues to BI Science's competing Geosurf service.

19.    By July 2017, Luminati learned that BI Science had hired its three former employees and started offering a residential proxy service through Geosurf. On July 12, 2017, Mr. Vilenski sent an email to Ms. Moyal requesting that Ms. Moyal collect and provide information

about Mr. Moyal's competing business, including its employment of Luminati's three former salespeople.  Mr. Vilenski specifically noted that Mr. Moyal gained detailed information from Mr. Vilenski as an advisor to Ms. Moyal, without Ms. Moyal disclosing that Mr. Moyal is involved in or is running a competing business.  On August 14, 2017, Mr. Vilenski sent a follow-up email to Ms. Moyal demanding that Mr. Moyal stop providing residential proxy services through GeoSurf.

20.     On February 8, 2018, Or Lenchner, then VP of Luminati and currently Luminati CEO, sent a letter to Mr. Moyal informing Mr. Moyal that Luminati had become aware that BI Science was developing, using, offering for sale or selling products and services in the field of VPN services based on residential IP peers, such as the GeoSurf service.  Mr. Lenchner notified BI Science that Luminati owns intellectual property within this field including specifically the '866 Patent attached to that letter in addition to other related patents and patent applications.  Mr. Lenchner invited BI Science to enter into licensing discussions to cover past and future use of this intellectual property by BI Science.  BI Science responded on March 8, 2018 in a letter from BI Science's outside counsel Asaf Biger.

21.     On April 16, 2018, Mr. Toval sent an email to Mr. Lenchner requesting a meeting to discuss potential licensing of Luminati's software patents, that resulted in a meeting on April 30, 2018.   On May 13, 2018, Mr. Lenchner sent a follow-up email with an attached request for information to promote licensing discussions.  Mr. Toval sent a response on May 31, 2018 indicating that BI Science was unable to provide such information.  Following additional efforts by Mr. Lenchner to propose a framework for a licensing agreement, Mr. Toval sent an email response on June 18, 2018 agreeing to review the framework and provide feedback, but BI Science has not done so.

22.    Since at least the filing of the original Complaint on November 8, 2018, BI Science has made false and/or misleading statements regarding Luminati and Luminati's residential proxy service in advertising directed toward Luminati's customers.  For example, on November 19, 2018, BI Science published a blog post on its website titled "Six Mistakes to Avoid When You Buy a Proxy" by Mr. Ghelber, Luminati's former employee, located on BI Science's website at https://www.geosurf.com/blog/six-mistakes-to-avoid-when-you-buy-a-proxy/.    Exhibit E.   The blog post states that "[s]ome proxy providers look great and fancy until you try to integrate them. Some-such as Luminati-are very difficult to integrate, as they require you to install complex proxy managers and to ultimately modify your entire solution." *id*. at 3.  This statement is false.  Use of Luminati's residential proxy service does not require installation of Luminati's proxy manager. Upon information and belief, Mr. Ghelber made this statement despite knowing it to be false.  This false statement has been repeated in other blog posts including the December 2, 2018 blog post titled "Your Ultimate Guide to Data Mining and Scraping Using a Proxy" by Pavel Gomon at https://www.geosurf.com/blog/ultimate-guide-data-mining-scraping-with-proxy/.  Exhibit F at 7. Upon information and belief, BI Science has specifically targeted customers searching for Luminati in its advertising campaign for Geosurf, which directs prospective customers of residential proxy services to BI Science's website.

## *"Is the proxy going to be difficult to integrate?"*

Well, that depends on which proxy service you purchase.

Some proxy providers look great and fancy until you try to integrate them. Some—such as Luminati—are very difficult to integrate, as they require you to install complex proxy managers and to ultimately modify your entire solution. Other proxy services require you to whitelist your IP addresses; but if you are using shared servers like Amazon Web Services (AWS) or any Software as a Service (SaaS) solution, you cannot whitelist the IPs, because they're probably in somebody else's whitelist.

In short, stay away from these proxies.

Instead, go for easy-integration proxies that support whatever your needs may be. GeoSurf, for instance, takes less than 5 minutes to integrate and supports the IP:port method with IP whitelist, the username-Password solution, and session persistence with an API.

https://www.geosurf.com/blog/ultimate-guide-data-mining-scraping-with-proxy/



23.     Upon information and belief, BI Science offers large-scale data harvesting products and services under the GeoSurf brand. https://www.GeoSurf.com/products/residential-ips/. Upon information and belief, this includes a residential proxy network with millions of residential IP

addresses from more than 192 countries. *id.*  Upon information and belief, the IP addresses of these residential proxies are assigned by a standard Internet Service Provider (ISP) to a homeowner or other residential or mobile user.  *id.*  Upon information and belief, this residential proxy network is used to access content over the Internet, wherein that content may be divided into portions, each of which includes part of the content and its own content identifier.  BI Science touts this service as permitting its customers to harvest data over the web via millions of "clean residential IPs."  BI Science also advertises this service as permitting its customers to select the proxy devices based on their location in specific states and cities.  BI Science also specifically touts the ability to select proxies located within 10 specific cities in Texas.  Exhibit G at 2-3.



## USING MILLIONS OF RESIDENTIAL IPS WILL NEVER GET YOU BLOCKED

The World's most advanced solution for data harvesting, now offers residential IPs! Our Residential IPs are based on a P2P Network, which enables our clients the freedom to harvest the web by harnessing a pool of over 2 Million unblocked IPs.

Our inbuilt IP rotation API is tailor made for high scope & high-performance Enterprise level activities. This unique approach enables you to send unlimited parallel requests through millions of 100% verified working IPs; this means that you will never get blocked again.

https://www.GeoSurf.com/products/residential-ips/



## UNLIMITED CLEAN RESIDENTIAL IPS

Over 2Million clean residential IPs. Our IPs are never detected as proxies. This combination of proxy masking & residential IPs gives us the ability to stay undetectable.

https://www.GeoSurf.com/products/residential-ips/

**✚ ❓ What is GeoSurf™?**

GeoSurf™ is a straight-forward a premium proxy service which enables users to send requests via 3 networks:

• GeoSurf™ Residential IPs proxy network with more than 2 Million Residential IPs in every country and every city in the world.

• GeoSurf™ Premium Static proxy network with servers in 130+ global locations and 30+ DMA's.

• GeoSurf™ Static proxy network with more than 10K static IPs in 20+ global locations

GeoSurf™ products enable users to surf and view geo-targeted local content from other areas. It also emulates many mobile devices. The service is available as a browser toolbar, VPN client, Direct Connect API, Residential IPs API, and smart phone connection.

https://www.GeoSurf.com/resources/faq/#ac_15174_collapse1

**➖ ⚠ State Gateway Overview**

This Residential IP Gateway that allows you to choose State's IPs. This service is available for all 50 US states and Washington DC.

**How it works?**

• Authentication – The authentication is done in the same way as all other gateways, so, if your IP is white-listed in our system you can start using the State gateway immediately

• State selection – The State gateway allows you to choose from all states using "loc" proxy header.

• Session persistence – The state gateway allows you to maintain session persistence and open multiple session using the "X-Session" proxy header.

• Limits – Like all other GSR services you have unlimited number of requests/sessions or connections and unlimited concurrent connections.

• Gateway domain – state.geosurf.io

https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15171_collapse4

**➖ 🔍 Can I select an IP per city?**

Yes, you can select an IP from all major US cities by using the City gateway. Check out GeoSurf Residential IPs Integration Guide for more information and request example. City IP is a premium feature, the city gateway's usage comes with a different pricing compared with your existing plan. Contact your customer success representative for additional information.

https://www.GeoSurf.com/resources/faq/#ac_15216_collapse4

**City Gateway overview**

This service is currently available for all major US cities and we will continue to add more and more cities in the near future.

**How it works?**

•   Authentication – The authentication is done the same way as all other gateways, If your IP is whitelisted in our system you can start using the City gateway immediately.

•   City selection – The city gateway allows you to choose from 100 US cities, each city has its own port range.

•   Limits – Like all other GSR services you are unlimited with number of requests/sessions or connections, concurrent connections are limited to 20 per machine IP.

•   Gateway domain – us-city1.geosurf.io

https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15171_collapse1

Upon information and belief, some of these user devices serving as residential proxies (and associated with respective IP addresses) are located in the Eastern District of Texas.  Upon information and belief, on a given day a hundred or more user devices belong to residents in the Eastern District of Texas are available for use as proxy devices for the GeoSurf service.  In addition to the residential proxies, upon information and belief, BI Science has customers in Texas who use its GeoSurf residential service.

24.    Defendant's data proxy servers are also located throughout the United States, including upon information and belief in Texas. *See e.g.* https://www.geosurf.com/blog/comparison-of-geosurf-proxy-service-and-foxy-proxy/. Defendant tout the location of data center servers around the world and United States.

**Locations:** In the online advertising world, a wide selection of important locations is critical. If you sign up with Foxy Proxy's 35 locations, you will be missing out. GeoSurf offers more than 50 locations more than FoxyProxy. To accurately test your content and advertising all over the globe, you need access to high value proxy locations.

Equally importantly, within the mighty United States market, web content and advertising is often targeted on a DMA (Demographic Market Area), or city level. Without proper proxy coverage, you are left blindly wondering how your ads (and your competitors' content) are displayed.

**Reliability:** Because GeoSurf is built by media professionals for media professionals, it is reliable and dependable. GeoSurf does not cater to consumers who are using the tool to watch restricted videos or play on restricted sites. Our proxy IPs are not blocked because our users do not abuse sites and applications. GeoSurf owns all of the servers on its proxy network and host them in Tier 1 datacenters around the world. Our network boasts the highest levels of reliability, availability, and security. We sign legally binding agreements with our customers that their search history or any other data will never be released or used for any purpose.

https://www.geosurf.com/blog/comparison-of-geosurf-proxy-service-and-foxy-proxy/



https://www.geosurf.com/

     25.    Upon information and belief, the residential proxy network used as part of the GeoSurf service is based upon numerous user devices, such as laptops and cell phones, each of which is a client device identifiable over the Internet, for example by an IP address. Upon information and belief, these client devices become part of the network through the use and execution of code located on the client device ("Proxy Software") which may be either Defendant's code, such as by implementation of a software development kit ("SDK") that is embedded in software applications downloaded on the client devices, and/or alternatively, third-party code

installed on these devices where Defendant has a contractual relationship with the third party resulting in Defendant's control over these client devices. Upon information and belief, these proxy devices are associated with at least an active state and a dormant state.  Upon information and belief, when the proxy device meets certain criteria, including for example sufficient battery power, sufficient available bandwidth, etc., the proxy device shifts or stays in an active state whereby it makes itself available to serve as a proxy device in the residential proxy system. However, upon information and belief, when the criteria are not met, such as for example when the device has low battery power or little available bandwidth, it enters a dormant state whereby it does not make itself available for use as a proxy device in the residential proxy service.  Upon information and belief, when in the active state, these devices send their identifier to a server of the Accused Instrumentalities, which store these identifiers.  Upon information and belief, while in the active state, these proxy devices remain available to receive requests submitted through the GeoSurf system and send the requests to a target web server, as well as sending any content received from the target web server to the server of the "Accused Instrumentalities."

26.     Upon information and belief, BI Science may contract with a third-party, such as Jetstar Media and/or Microleaves Ltd., to implement its GeoSurf residential proxy network.  Upon information and belief, whether BI Science owns Proxy Software or contracts with a third-party that owns the Proxy Software, BI Science directs and controls the Proxy Software to implement the GeoSurf residential proxy service and the residential proxy devices within the Accused Instrumentalities.

27.     Upon information and belief, software  is executed on servers in the network of the Accused Instrumentalities to implement the GeoSurf residential proxy service.  Upon information

and belief, BI Science directs and controls the operation of the Server Software to the extent that the Server Software implements the GeoSurf service.

28.     Upon information and belief, as part of the GeoSurf service, BI Science provides a device designated as a 'Gateway,' which authenticates the user devices of BI Science customers and controls the access and operation of requests and responses through the one or more third-party proxy residential networks directed and controlled by BI Science, and is in continuous communication with the server software. Upon information and belief, BI Science provides a residential proxy service through their GeoSurf system that allows customers to utilize residential proxy devices in fetching content over the Internet. Upon information and belief, Proxy Software installed on the residential proxy devices cause the devices to perform the steps of at least claims 1, 2, 4, 7, 9, 11, 12, 15, 16, 17, and 29 of the '614 Patent, claims 1, 17, 24, 25, and 27 of the '319 Patent, and claims 1, 8, 13, 15, 16, 18, 20, 22, and 23 of the '510 Patent. This Proxy Software is under the control of Defendants, either directly or via Defendant's contractual relationship with its software application partners, including partners integrating Defendant's SDK in their applications. As this code is under the control of Defendants, Defendants cause each of these steps to also be performed. In addition, given Defendants' contractual relationship with its customers, the customers utilization of the Accused Instrumentalities also causes each of the claimed steps to be performed. BI Science also directly practice these claims by implementing customer requests as part of its Geosurf service. In addition, upon information and belief, as BI Science knew of the Asserted Patents and had notice that its residential proxy service infringed these patents, but continued to advertise Geosurf's infringing features and enter into contracts with its customers to provide this service, BI Science intended its customers to implement this infringing service.



https://www.geosurf.com/products/

## BROWSER & OS CONFIGURATION

**—  🖥  Internet Explorer, Chrome & Edge Browser**



1. Open Windows Explorer.
2. Type in "Internet Properties"
3. Click on "connections" tab.
4. Navigate to "LAN settings"
5. Check the first checkbox under "Proxy server"
6. Click "Advanced"
7. Fill in your proxy address (ex: gw1.geosurf.io) and port (ex: 8020) under HTTP.
8. The "use the same proxy server" checkbox should be checked.
9. Click OK and Apply to save your proxy settings.
10. Go to ipinfo.io and verify the IP you got is from the desired country

https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15054_collapse1

**—  ⊙  Do you support authentication by IP?**

Yes, IP address of every device / Machine which uses Geosurf should be authorized. The IP can be easily managed from our dashboard, click here to login to your dashboard.

https://www.GeoSurf.com/resources/faq/#ac_15217_collapse4



https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15173_collapse6

**━  ❶  Are you getting 408 timeouts?**

If a significant portion of your requests is timing out ( 408 response code), there are a few reasons this could happen:

1. The network connection between you and our gateway or between the gateway and the IP is not stable.
    1. Try using another gateway (ex. gw2.geosurf.io) and see if it fixes the issue.
    2. Try switching an IP, simply end the session and make another request through our gateway (IP will rotate automatically)
2. The request you are making takes a long time to load.
    1. Increase the request timeout using a within the request header.
    2. Switch an IP.
3. The residential IPs has been blocked by the remote site.
    1. Although this rarely happens, switching an IP will resolve the issue.

If only a small percentage of your requests are getting a 408 response code, the optimal solution is to resend your requests with a short delay of at least 3 seconds in-between each request.

https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15173_collapse3

     29.     Specifically, upon information and belief, Defendant's residential proxy network comprises numerous proxy devices, each of which is a client device such as a laptop or smartphone identifiable by its own identifier, such as (but not limited to) an IP address, with the Proxy Software operating on that device.  Upon information and belief, the proxy devices of the Accused Instrumentalities send its identifier to a server of the Accused Instrumentalities following the proxy

device connecting to the Internet with the proxy devices and server of the Accused Instrumentalities communicate periodically thereafter. Upon information and belief, each proxy device is associated with a first and second state ("first state" or "second state") according to a utilization of a resource, such as for example battery life, bandwidth usage or a threshold value associated with idleness. Upon information and belief, a periodic or continuous determination is made whether the device satisfies a criterion for resource utilization, and based upon that determination, such as for example when a threshold value associated with idleness is above or below that threshold, shifts the proxy device between a first state or second state.  Upon information and belief, when the criterion is satisfied and the proxy device is in the first state, the proxy device is responsive to receiving a request from the server of the Accused Instrumentalities. Upon information and belief, the determination of whether the device satisfies a criterion for resource utilization is made on the proxy device.  Upon receiving a request, the proxy device performs a task.



https://vimeo.com/250282014 (**Time: 00:47 sec to 01:20 sec**)



https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15173_collapse6

**─  ☑  When and Where Should I use Sticky IPs?**

When should I use Sticky IPs?



You should use Sticky IPs when you must run sequential requests to the target domain or website in a single session.

Examples: Running requests to several web pages from the same website, Navigating through several web pages using the same session etc.

https://www.GeoSurf.com/resources/residential-ips-integration-guide/#ac_15172_collapse1

30.    Upon information and belief, having received a request from a server of the GeoSurf residential proxy network, a proxy device is used to fetch content identified by a content

identifier over the Internet from a web server, which stores the content and is distinct from the servers of the GeoSurf system.  Upon information and belief, the proxy device fetches content by (a) receiving a content identifier from the server of the GeoSurf system; (b) sending the content identifier to the web server; (c) receiving the content from the web server in response to the sending of the content identifier to the web server; and (d) sending the content to the server of the GeoSurf system.  Upon information and belief, the above steps are executed on the proxy device by the Proxy Software installed on that device, which can be downloaded on that device from servers on the Internet.

31.    Upon information and belief, the content may include partial or whole files, text, numbers, audio, voice, multimedia, video, images, music, computer program, or a part or a whole of a web-site page.  Upon information and belief, the content may be identified by a uniform resource locator.

32.    Upon information and belief, web servers are or include Hypertext Transfer Protocol (HTTP) servers that respond to HTTP requests including both normal HTTP and HTTPS requests, and the proxy device may send an HTTP request comprising the content identifier to the web server.  Further, upon information and belief, the proxy device may establish Transmission Control Protocol (TCP) connections with the server of the Accused Instrumentalities and web server, with the content identifier and content sent over the established TCP connections to and from the proxy device.  Similarly, upon information and belief, the proxy device may establish a TCP connection with the web server.

| ─ What protocols are supported? |
|---|

Currently we only support HTTP/S protocols.

https://www.geosurf.com/resources/faq/#ac_15875_collapse15

33.     Upon information and belief, each proxy device stores, operates or uses a client operating system including but not limited to a mobile operating system such as Android version 2.2, 2.3, 4.0, 4.2, 4.4, and Microsoft Windows Phone version 7, 8, and 9.

34.     The use of the residential proxy network permits anonymity to GeoSurf customers, for example for engaging in activities such as web crawling without disclosing the customer's identity to the targeted web sites.

35.     BI Science also provides a data center proxy service through the Accused Instrumentalities allowing a Geosurf service customer to utilize data center proxy devices in fetching content over the Internet.  Upon information and belief, software ("Server Software") installed on servers of the Accused Instrumentalities causes the servers to perform the steps of at least claims 1, 14, 17, 20, 21, 22, 25, 27, 28, 29 and 30 of the '511 Patent.  This code is under the control of Defendant, either directly or via Defendant's contractual relationship with its partners. As this code is under the control of Defendant, Defendant cause each of these steps to also be performed.  In addition, given Defendant's contractual relationship with its customers, the customers utilization of the Accused Instrumentalities also causes each of the claimed steps to be performed.  Upon information and belief, client devices, including those controlled by Defendant's customers, can use the Accused Instrumentalities to fetch content over the Internet by sending a query to a server of the Accused Instrumentalities. Upon information and belief, this query can comprise a URL corresponding with a webpage, audio and/or video content stored on a web server.

**— How secure and private is GeoSurf?**

Our network boasts the highest levels of reliability, availability, and security. Because we own all of the servers on our network and host them in Tier 1 backbone data centers around the world, all of our users experience a totally secure browsing experience. We sign legally binding agreements with our customers to ensure their privacy.

https://www.geosurf.com/resources/faq/#ac_15875_collapse11

36.     Upon information and belief, the Geosurf data center proxy network of the Accused Instrumentalities is based upon a large number of data center servers located around the World, including in the United States. *See* *e.g.* https://www.geosurf.com/resources/faq/#ac_15875_collapse15.   Upon information and belief, each data center server stores a group of IP addresses as shown below.  Upon information and belief, upon receiving a request for content from a client device, a server of the Accused Instrumentalities can select an IP address from the group of addresses for sending the request to a web server.

**— Which locations are available in GeoSurf™?**

**GeoSurf Static Locations:** GeoSurf™ Static gateways are available in over 130 Countries and 30 US Designated Market Areas, **GeoSurf™ Residential Locations:** We have Residential IPs in 150+ countries and more than 1700 of cities around the world. We are constantly adding more IPs and locations to our network! Check out our available locations here.

https://www.geosurf.com/resources/faq/#ac_15875_collapse15



https://www.geosurf.com/

37.     Upon information and belief, as shown above, in fetching content for the client device, the server (a) receives a URL from the client device; (b) selects an IP address from a group of IP addresses stored on the server; (c) sends the URL to a web server using the selected IP address; (d) receives the requested content from the web server, which can comprise a web page, audio and/or video content; and (e) sends the content to the client device.

38.     Upon information and belief, the selecting by the server of the Accused Instrumentalities may be done by a criterion, such as geography. *See* https://www.geosurf.com/resources/faq/#ac_15875_collapse9.

> **━  What is Geosurf Pro Browser Extension (Toolbar)?**
>
> GeoSurf Pro browser extension is a cutting edge, easy-to-use, proxy solution combining residential IPs alongside with GeoSurf's trusted premium proxies network in a single chrome & Firefox extension. GeoSurf Pro allows you to monitor geo-targeted local content, as if you were actually in these locations. GeoSurf Pro is a fast and reliable Residential and Data-Center IPs business proxy add on allowing you to switch between more than 2 million unique IPs worldwide.

https://www.geosurf.com/resources/faq/#ac_15875_collapse9

39.    Upon information and belief, the client device may be addressed by an IP address, which can be stored on the server, as shown in the below example regarding whitelisting.

> **━  Do you support authentication by IP?**
>
> Yes, IP address of every device / Machine which uses Geosurf should be authorized. The IP can be easily managed from our dashboard, click here to login to your dashboard.

https://www.geosurf.com/resources/faq/#ac_15214_collapse7

> **━  Error message 503 – No server is available to handle this request**
>
> In most cases this it happens because your machine public IP is not whitelisted in the system. In order to verify your IP address is whitelisted in the system, please follow the steps below:
> 1. Make sure there are no proxy active on the machine
> 2. Go to geo.geosurf.io
> 3. Copy the IP received there
> 4. Log in to Geosurf Dashboard and navigate to "add IP" tab
> 5. Add your machine IP there.
> 6. Please note that the authentication process of a new IP may take up to 30 min

https://www.geosurf.com/resources/faq/#ac_15887_collapse4

40.    Upon information and belief, the server of the Accused Instrumentalities is a Transmission Control Protocol/Internet Protocol (TCP/IP) server that communicates of the Internet with client devices based on TCP/IP protocol.  Upon information and belief, this server

stores, operates or uses a server operating system and uses a software application including instructions to carry out the steps for fetching content as discussed above.

41.     Upon information and belief, the web server is a Hypertext Transfer Protocol (HTTP) server responding to HTTP requests and addressed in the Internet using a web server IP address.

> **— What protocols are supported?**
>
> Currently we only support HTTP/S protocols.

https://www.geosurf.com/resources/faq/#ac_15875_collapse15

## COUNT I
### (Infringement of the '614 Patent)

42.     Luminati repeats and re-alleges the allegations contained in paragraphs 1-41 of this Complaint as if fully set forth herein.

43.     The '614 Patent entitled "System and Method for Improving Internet Communication by Using Intermediate Nodes" was duly and legally issued by the U.S. Patent and Trademark Office on November 5, 2019, from Application No. 16/214,433 filed on December 10, 2018, a continuation of Application No. 16/140,785 which is a continuation of application No. 15/663,762, which is a continuation of application No. 14/930,894, now Pat. No. 9,742,866 ("'866 Patent"), which is a divisional of application No. 14/468,836, now Pat. No. 9,241,044 ("'044 Patent"), all of which claim priority to provisional applications 61/870,815 filed on August 28, 2013. A true and accurate copy of the '614 Patent is attached hereto as Exhibit A.

44.     Each and every claim of the '614 Patent is valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

45.     Luminati is the sole owner of the '614 Patent and has rights to past damages.

46.     Independent Claim 1 of the '614 Patent recites:

A method for use with a resource associated with a criterion in a client device that communicates with a first server over the Internet, the client device is identified in the Internet using a first identifier and is associated with first and second state according to a utilization of the resource, the method comprising:

initiating, by the client device, communication with the first server over the Internet in response to connecting to the Internet, the communication comprises sending, by the client device, the first identifier to the first server over the Internet;

when connected to the Internet, periodically or continuously determining whether the resource utilization satisfies the criterion;

responsive to the determining that the utilization of the resource satisfies the criterion, shifting to the first state or staying in the first state;

responsive to the determining that the utilization of the resource does not satisfy the criterion, shifting to the second state or staying in the second state,

responsive to being in the first state, receiving, by the client device, a request from the first server; and

performing a task, by the client device, in response to the receiving of the request from the first server;

wherein the method is further configured for fetching over the Internet a first content identified by a first content identifier from a web server that is distinct from the first server, and the task comprising:

receiving, by the client device, the first content identifier from the first server;

sending by the client device, the first content identifier to the web server;

receiving, by the client device, the first content from the web server in response to the sending of the first content identifier; and

sending, by the client device, the received first content to the first server.

47.     As described above, upon information and belief, the Accused Instrumentalities comprise numerous proxy devices ("client devices"), each of which is a client device identifiable by its own identifier ("first identifier").  Upon information and belief, upon connecting to the Internet, a client device initiates communication with a server ("first server") of the Accused Instrumentalities by sending information over the Internet to the first server, including the first identifier.   Upon information and belief, the proxy devices in Defendant's GeoSurf residential proxy network each have a first state and second state.  Upon information and belief, the Accused Instrumentalities determines whether the resource utilization of a proxy device satisfies a criterion as per claim 1 of the '614 Patent, and upon determining that the criterion is satisfied shifts the client device to a first state or upon determining that the criterion is not satisfied shifts the client device to a second state.

48.     As described above, upon information and belief, when a client device is in the first state it can receive a request from the first server and perform a task in response to receiving this request.  The client device can fetch content ("first content"), such as for example a website, identified by a content identifier ("first content identifier"), such as for example a URL, over the Internet from a web server ("web server"), such as (but not limited to) a server hosting a website, that is distinct from the first server.  Upon information and belief, the client device can (a) receive the first content identifier from the first server; (b) send the first content identifier to the web server; (c) receive the first content from the web server in response to the sending of the first content identifier; and (d) send the received first content to the first server.

49.     The '614 Patent includes a number of dependent claims.  In addition to practicing the steps of independent claim 1, upon information and belief as discussed above, Defendant and others using Defendant's Accused Instrumentalities also practice the steps of at least the following dependent claims:

Claim 2: The method according to claim 1, wherein the determining is performed by the client device.

Claim 4: The method according to claim 1, wherein the communication by the client device with the first server is based on, or is according to, TCP/IP protocol or connection.

Claim 7: The method according to claim 1, wherein the steps are sequentially executed.

Claim 9: The method according to claim 1, wherein the client device is further storing, operating, or using, a client operating system.

Claim 11: The method according to claim 9, wherein the client operating system is a mobile operating system.

Claim 12: The method according to claim 11, wherein the mobile operating system is one out of Android version 2.2 (Froyo ), Android version 2.3 (Gingerbread), Android version 4.0 (Ice Cream Sandwich), Android Version 4.2 (Jelly Bean), Android version 4.4 (KitKat)), Apple iOS version 3, Apple iOS version 4, Apple iOS version 5, Apple iOS version 6, Apple iOS version 7, Microsoft Windows® Phone version 7, Microsoft Windows® Phone version 8, Microsoft Windows ® Phone version 9, and Blackberry® operating system.

Claim 15: The method according to claim 1, wherein the client device comprises, or consists of, a portable or mobile device.

Claim 16: The method according to claim 15, wherein the mobile device comprises a smartphone.

Claim 17: The method according to claim 1, for use with a set threshold value, and wherein the criterion is satisfied when the resource utilization is above or below the threshold.

Claim 29: The method according to claim 1, wherein the web server uses HyperText Transfer Protocol (HTTP) and responds to HTTP requests via the Internet, and wherein the sending of the first content identifier to the web server comprises a HTTP request, or wherein the communication with the web server is based on, or uses, HTTP persistent connection, and wherein the first content includes, consists of, or comprises, a part or whole of files, text, numbers, audio, voice, multimedia, video, images, music, or computer program, or wherein the first content includes, consists of, or comprises, a part of, or a whole of, a web-site page.

50.     As part of the First Action, Defendant has been in litigation with Plaintiff involving assertion of infringement of US Patent Nos. 9,241,044 ("'044 Patent") and 9,742,866 ("'866 Patent"), both of which are related to the '614 Patent.  Defendant has actual notice of the '614 Patent since at least the filing of this Complaint and know at least from this Complaint that implementation of the Accused Instrumentalities using residential proxy devices in the United States infringe at least claims 1, 2, 4, 7, 9, 11, 12, 15, 16, 17 and 29 of the '614 Patent.

51.     Upon information and belief, Defendant sold, offered to sell, used, tested, and imported and continues to sell, offer to sell, use, test, and import the Accused Instrumentalities into the United States.  Defendant imports their embedded code into the United States directly and/or via Defendant's application partners, which is implemented on devices located in the United States. Defendant's embedded code enables devices to serve as residential proxy devices for the

Accused Instrumentalities and is not used for other commercial services or products.  Defendant provides the residential service of the Accused Instrumentalities to their customers with the knowledge and intent that the customers' implementation of the service using residential proxies located in the U.S. would infringe the '614 Patent.

52.    Defendant has been and is now infringing at least directly, indirectly and/or contributorily, one or more claims including at least claims 1, 2, 4, 7, 9, 11, 12, 15, 16, 17 and 29 of the '614 Patent, both literally and/or under the doctrine of equivalents, by implementing the Accused Instrumentalities using residential proxy devices located in the United States without authority and/or license from Luminati, and Defendant is liable to Luminati under 35 U.S.C. § 271 *et seq*., including but not limited to under Sections 271(a), (b), (c) and/or (g).  On information and belief, at least since the service of this Complaint, Defendant has been aware of the Asserted Patents yet have continued to infringe and cause proxies in the United States under Defendant's control to infringe claims of the Asserted Patents and have induced infringement.  On further information and belief, Defendant has developed, used, offered to sell and/or sold within the United States and imported into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, including as one non-limiting example the Defendant's SDK imported into and implemented in user devices in the United States as well as the API and/or any other instructions provided to Defendant's customers that result in infringement.  On further information and belief, Defendant also imports and sells as well as causes others to use within the United States a product which is made by a process patented in the United

States whereby the importation, offer to sell, sale, and/or use of the product occurs during the term of such process patent.  Such products may include for example, the set of results sent to customers in the United States as created and assembled by the patented methods of the Asserted Patents.

53.     As a result of Defendant's infringement of the '614 Patent, Luminati has suffered and continues to suffer damages.  Thus, Luminati is entitled to recover from Defendant the damages Luminati sustained as a result of Defendant's wrongful and infringing acts in an amount no less than its lost profits and/or a reasonable royalty, together with interest and costs fixed by this Court together with increased damages up to three times under 35 U.S.C. § 284.

54.     Luminati has suffered damage because of the infringing activities of Defendant, their officers, agents, servants, employees, associates, partners, and other persons who are in active concert or participation therewith, and Luminati will continue to suffer irreparable harm for which there is no adequate remedy at law unless Defendant's infringing activities are preliminarily and permanently enjoined by this Court. Luminati practices the Asserted Patents. Non-exclusive examples of damage incurred by Luminati as a result of Defendant's infringement include, but are not limited to, lost profits and/or a reasonable royalty, loss of market share, lowered prices and the inability of Luminati to obtain the revenues and profits it would have been able to obtain but for the infringement, lost sales in other services when customers did not purchase Data Center proxy services from Luminati as a result of the infringement, and loss of convoyed sales of other related services that Luminati would have sold but for the infringement.

55.     Defendant's infringement of the '614 Patent is and continues to be deliberate and willful because Defendant was and is on notice of the '614 Patent at least as early as this complaint, yet Defendant continues to infringe the '614 Patent.  This case should be deemed an exceptional case under 35 U.S.C. § 285, and if so, Luminati is entitled to recover its attorneys' fees.

**COUNT II**
(Infringement of the '319 Patent)

56.     Luminati repeats and re-alleges the allegations contained in paragraphs 1-55 of this Complaint as if fully set forth herein.

57.     The '319 Patent entitled "System Providing Faster and More Efficient Data Communication" was duly and legally issued by the U.S. Patent and Trademark Office on April 9, 2019, from Application No. 15/957,945 filed on April 20, 2018, which is a continuation of application No. 14/025,109, which is a division of application No.  12/836,059, now Pat. No. 8,560,604, all of which claim priority to provisional application 61/249,624 filed on October 8, 2009. A true and accurate copy of the '319 Patent is attached hereto as Exhibit B.

58.     Each and every claim of the '319 Patent is valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

59.     Luminati is the sole owner of the '319 Patent and has rights to past damages.

60.     Claim 1 of the '319 Patent recites:

A method for use with a first client device, for use with a first server that comprises a web server that is a Hypertext Transfer Protocol (HTTP) server that responds to  HTTP requests, the first server stores a first content identified by a first content identifier, and for use with a second server, the method by the first client device comprising:

receiving, from the second server, the first content identifier;

sending, to the first server over the Internet, a Hypertext Transfer Protocol (HTTP) request that comprises the first content identifier;

receiving, the first content from the first server over the Internet in response to the sending of the first content identifier; and

sending, the first content by the first client device to the second server, in response to the receiving of the first content identifier.

61.     As described in the above paragraphs, upon information and belief, the Accused Instrumentalities comprise numerous proxy devices each of which is a client device ("first client device") and a server of the Accused Instrumentalities ("second server").  An HTTP web server that responds to HTTP requests ("first server") stores content ("first content") identified by an identifier ("first content identifier"), such as for example an HTTP web server storing a webpage identified by a URL address.  As described above, a first client device (a) receives a first content identifier from the second server of the Accused Instrumentalities; (b) sends an HTTP request comprising the first content identifier to the first server; (c) receives the first content from the first server over the Internet in response to the sending of the first content identifier; and sends the first content to the second server of the Accused Instrumentalities in response to receiving the first content identifier.

62.     The '319 Patent includes a number of dependent claims.  In addition to practicing the steps of independent claim 1, upon information and belief as discussed above, Defendant and others using Defendant's Accused Instrumentalities also practice the steps of the following dependent claims:

Claim 17: The method according to claim 1, further comprising periodically communicating between the second server and the first client device.

Claim 24: The method according to claim **1,** further comprising establishing, by the first client device, a Transmission Control Protocol (TCP) connection with the second server using TCP/IP protocol.

Claim 25:  The method according to claim **1,** wherein the first or second server is a Transmission Control Protocol/Internet Protocol (TCP/IP) server, wherein the first client device communicates over the Internet with the first or second server based on, or according to, using TCP/IP protocol or connection.

Claim 27:  The method according to claim **1,** wherein the steps are sequentially executed.

63.    Defendant has actual notice of the '319 Patent since at least the filing of this complaint and know at least from this complaint that implementation of the Accused Instrumentalities using residential proxy devices in the United States would infringe at least claims 1, 17, 24, 25, and 27 of the '319 Patent.

64.    Upon information and belief, Defendant sold, offered to sell, used, tested, and imported and continues to sell, offer to sell, use, test, and import the Accused Instrumentalities into the United States.  Defendant imports their embedded code into the United States directly and/or via Defendant's application partners, which is implemented on devices located in the United States. Defendant's embedded code enables devices to serve as residential proxy devices for the Accused Instrumentalities and is not used for other commercial services or products.  Defendant provides the residential service of the Accused Instrumentalities to their customers with the knowledge and intent that the customers' implementation of the service using residential proxies located in the U.S. would infringe the '319 Patent.

65.    Defendant has been and is now infringing at least directly, indirectly and/or contributorily, one or more claims including at least claims 1, 17, 24, 25 and 27 of the '319 Patent, both literally and/or under the doctrine of equivalents, by implementing the Accused Instrumentalities using residential proxy devices located in the United States without authority and/or license from Luminati and are liable to Luminati under 35 U.S.C. § 271 *et seq*., including

but not limited to under Sections 271(a), (b), (c) and/or (g).  On information and belief, at least since the service of this Complaint, Defendant has been aware of the Asserted Patents yet has continued to infringe and cause proxies in the United States under Defendant's control to infringe claims of the Asserted Patents and have induced infringement.  On further information and belief, Defendant has developed, used, offered to sell and/or sold within the United States and imported into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, including as one non-limiting example the Defendant's SDK imported into and implemented in user devices in the United States as well as the API and/or any other instructions provided to Defendant's customers that result in infringement.  On further information and belief, Defendant also imports and sells as well as cause others to use within the United States a product which is made by a process patented in the United States whereby the importation, offer to sell, sale, and/or use of the product occurs during the term of such process patent.  Such products may include for example, the set of results sent to customers in the United States as created and assembled by the patented methods of the Asserted Patents.

66.    As a result of Defendant's infringement of the '319 Patent, Luminati has suffered and continues to suffer damages.  Thus, Luminati is entitled to recover from Defendant the damages Luminati sustained as a result of Defendant's wrongful and infringing acts in an amount no less than its lost profits and/or a reasonable royalty, together with interest and costs fixed by this Court together with increased damages up to three times under 35 U.S.C. § 284.

67.     Luminati has suffered damage because of the infringing activities of Defendant, their officers, agents, servants, employees, associates, partners, and other persons who are in active concert or participation therewith, and Luminati will continue to suffer irreparable harm for which there is no adequate remedy at law unless Defendant's infringing activities are preliminarily and permanently enjoined by this Court. Luminati practices the Asserted Patents. Non-exclusive examples of damage incurred by Luminati as a result of Defendants' infringement include, but are not limited to, lost profits and/or a reasonable royalty, loss of market share, lowered prices and the inability of Luminati to obtain the revenues and profits it would have been able to obtain but for the infringement, lost sales in other services when customers did not purchase Data Center proxy services from Luminati as a result of the infringement, and loss of convoyed sales of other related services that Luminati would have sold but for the infringement.

68.     Defendant's infringement of the '319 Patent is and continues to be deliberate and willful because Defendant was and is on notice of the '319 Patent at least as early as this complaint, yet Defendant continues to infringe the '319 Patent. This case should be deemed an exceptional case under 35 U.S.C. § 285, and if so, Luminati is entitled to recover its attorneys' fees.

## COUNT III
### (Infringement of the '510 Patent)

69.     Luminati repeats and re-alleges the allegations contained in paragraphs 1-68 of this Complaint as if fully set forth herein.

70.     The '510 Patent entitled "System Providing Faster and More Efficient Data Communication" was duly and legally issued by the U.S. Patent and Trademark Office on November 19, 2019, from Application No. 16/278,107 filed on February 17, 2019, a continuation of Application No. 15/957,945, now Pat. No. 10,257,319, which is a continuation of application

No. 14/025,109, now Pat. No. 10,069,936, which is a divisional of application No. 12/836,059, now Pat. No. 8,560,604, all of which claim priority to provisional application 61/249,624 filed on October 8, 2009. A true and accurate copy of the '510 Patent is attached hereto as Exhibit C.

71.     Each and every claim of the '510 Patent is valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

72.     Luminati is the sole owner of the '510 Patent and has rights to past damages.

73.     Claim 1 of the '510 Patent recites:

A method for use with a web server that responds to Hypertext Transfer Protocol (HTTP) requests and stores a first content identified by a first content identifier, the method by a first client device comprising:

> establishing a Transmission Control Protocol (TCP) connection with a second server;
>
> sending, to the web server over an Internet, the first content identifier;
>
> receiving, the first content from the web server over the Internet in response to the sending of the first content identifier; and
>
> sending the received first content, to the second server over the established TCP connection, in response to the receiving of the first content identifier.

74.     As described in the above paragraphs, upon information and belief, the Accused Instrumentalities comprise numerous proxy devices each of which is a client device ("first client device") and a server of the Accused Instrumentalities ("second server").  A web server that responds to HTTP requests ("web server") stores content ("first content") identified by an identifier ("first content identifier"), such as for example an HTTP web server storing a webpage identified by a URL address.  As described above, a first client device (a) establishes a TCP connection with a second server; (b) sends the first content identifier to the web server; (c) receives

the first content from the web server over the Internet in response to the sending of the first content identifier; and (d) sends the received first content to the second server of the Accused Instrumentalities over the established TCP connection in response to the receiving of the first content identifier.

75.    The '510 Patent includes a number of dependent claims.  In addition to practicing the steps of independent claim 1, upon information and belief as discussed above, Defendant and others using Defendant's Accused Instrumentalities also practice the steps of the following dependent claims:

Claim 8: The method according to claim **1,** further comprising periodically communicating over the TCP connection between the second server and the first client device.

Claim 13: The method according to claim **1,** for use with a software application that includes computer instructions that, when executed by a computer processor, cause the processor to perform the sending of the Hypertext Transfer Protocol (HTTP) request, the receiving and storing of the first content, the receiving of the first content identifier, and the sending of the part of, or the whole of, the stored first content, the method is further preceded by:

downloading, by the first client device from the Internet, the software application; and installing, by the first client device, the downloaded software application.

Claim 15:  The method according to claim **1,** further comprising receiving, by the first client device from the second server over the established TCP connection, the first content identifier.

Claim 16:  The method according to claim **1,** wherein the sending of the first content identifier to the web server over the Internet comprises sending a Hypertext Transfer Protocol (HTTP) request that comprises the first content identifier.

Claim 18:  The method according to claim **1,** wherein the second server is a Transmission Control Protocol/Internet Protocol (TCP/IP) server that communicates over the Internet based on, or according to, using TCP/IP protocol or connection, and wherein the first client device is a Transmission Control Protocol/Internet Protocol (TCP/IP) client that communicates with the second server over the Internet based on, or according to, TCP/IP protocol.

Claim 20:   The method according to claim **1,** wherein the first content comprises web-page, audio, or video content, and wherein the first content identifier comprises a Uniform Resource Locator (URL).

Claim 22:  The method according to claim **1,** further comprising storing, operating, or using, a client operating system.

Claim 23: The method according to claim **1,** wherein the steps are sequentially executed.

76.     Defendant has actual notice of the '510 Patent since at least the filing of this Complaint and know at least from this Complaint that implementation of the Accused Instrumentalities using residential proxy devices in the United States would infringe at least claims 1, 8, 13, 15, 16, 18, 20, 22 and 23 of the '510 Patent.

77.     Upon information and belief, Defendant sold, offered to sell, used, tested, and imported and continues to sell, offer to sell, use, test, and import the Accused Instrumentalities into the United States.  Defendant imports their embedded code into the United States directly and/or via Defendant's application partners, which is implemented on devices located in the United

States. Defendant's embedded code enables devices to serve as residential proxy devices for the Accused Instrumentalities and is not used for other commercial services or products.  Defendant provides the residential service of the Accused Instrumentalities to their customers with the knowledge and intent that the customers' implementation of the service using residential proxies located in the U.S. would infringe the '510 Patent.

78.     Defendant has been and is now infringing at least directly, indirectly and/or contributorily, one or more claims including at least claims 1, 8, 13, 15, 16, 18, 20, 22 and 23 of the '510 Patent, both literally and/or under the doctrine of equivalents, by implementing the Accused Instrumentalities using residential proxy devices located in the United States without authority and/or license from Luminati and are liable to Luminati under 35 U.S.C. § 271 *et seq*., including but not limited to under Sections 271(a), (b), (c) and/or (g).  On information and belief, at least since the service of this Complaint, Defendant has been aware of the Asserted Patents yet has continued to infringe and cause proxies in the United States under Defendant's control to infringe claims of the Asserted Patents and have induced infringement.  On further information and belief, Defendant has developed, used, offered to sell and/or sold within the United States and imported into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, including as one non-limiting example the Defendant's SDK imported into and implemented in user devices in the United States as well as the API and/or any other instructions provided to Defendant's customers that result in infringement.  On further information and belief, Defendant also imports and sells as well as cause others to use within the

United States a product which is made by a process patented in the United States whereby the importation, offer to sell, sale, and/or use of the product occurs during the term of such process patent.  Such products may include for example, the set of results sent to customers in the United States as created and assembled by the patented methods of the Asserted Patents.

79.     As a result of Defendant's infringement of the '510 Patent, Luminati has suffered and continues to suffer damages.  Thus, Luminati is entitled to recover from Defendant the damages Luminati sustained as a result of Defendant's wrongful and infringing acts in an amount no less than its lost profits and/or a reasonable royalty, together with interest and costs fixed by this Court together with increased damages up to three times under 35 U.S.C. § 284.

80.     Luminati has suffered damage because of the infringing activities of Defendant, their officers, agents, servants, employees, associates, partners, and other persons who are in active concert or participation therewith, and Luminati will continue to suffer irreparable harm for which there is no adequate remedy at law unless Defendant's infringing activities are preliminarily and permanently enjoined by this Court. Luminati practices the Asserted Patents. Non-exclusive examples of damage incurred by Luminati as a result of Defendants' infringement include, but are not limited to, lost profits and/or a reasonable royalty, loss of market share, lowered prices and the inability of Luminati to obtain the revenues and profits it would have been able to obtain but for the infringement, lost sales in other services when customers did not purchase Data Center proxy services from Luminati as a result of the infringement, and loss of convoyed sales of other related services that Luminati would have sold but for the infringement.

81.     Defendant's infringement of the '510 Patent is and continues to be deliberate and willful because Defendant was and is on notice of the '510 Patent at least as early as this complaint,

yet Defendant continues to infringe the '510 Patent. This case should be deemed an exceptional case under 35 U.S.C. § 285, and if so, Luminati is entitled to recover its attorneys' fees.

### COUNT IV
#### (Infringement of the '511 Patent)

82.     Luminati repeats and re-alleges the allegations contained in paragraphs 1-81 of this Complaint as if fully set forth herein.

83.     The '511 Patent entitled "System Providing Faster and More Efficient Data Communication" was duly and legally issued by the U.S. Patent and Trademark Office on November 19, 2019, from Application No. 16/278,109 filed on February 17, 2019, a continuation of Application No. 15/957,950, which is a continuation of application No. 14/025,109, which is a divisional of application No. 12/836,059, all of which claim priority to provisional application 61/249,624 filed on October 8, 2009. A true and accurate copy of the '511 Patent is attached hereto as Exhibit D.

84.     Each and every claim of the '511 Patent is valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

85.     All rights, title, and interest in the '511 Patent have been assigned to Luminati, who is the sole owner of the '511 Patent and possesses the right to past damages.

86.     Independent Claim 1 of the '511 Patent recites:

A method for fetching, by a first client device, a first content identified by a first content identifier and stored in a web server, for use with a first server that stores a group of IP addresses, the method by the first server comprising:

receiving, from the first client device, the first content identifier;

selecting, in response to the receiving of the first content identifier from the first client device, an IP address from the group;

sending, in response to the selecting, the first content identifier to the web server using the selected IP address;

receiving, in response to the sending, the first content from the web server; and

sending the received first content to the first client device, wherein the first content comprises a web-page, an audio, or a video content, and wherein the first content identifier comprises a Uniform Resource Locator (URL).

87.     As described above, upon information and belief, the data center proxy service of the Accused Instrumentalities comprise a server ("first server"), which receives from a client device ("first client device") a URL ("first content identifier") for content comprising a web-page, audio or video content ("first content") stored on a web server.  Upon information and belief, the server selects an IP address from a group of IP addresses stored on the server in response to receiving the first content identifier and sends the URL to the web server using the selected IP address.  Upon information and belief, the server receives the first content from the web server in response to sending the URL and sends the received first content to the first client device.

88.     The '511 Patent includes a number of dependent claims.  In addition to practicing the steps of independent claim 1, upon information and belief as discussed above, Defendant and others using Defendant's data center proxy service of the Accused Instrumentalities also practice the steps of at least the following dependent claims:

Claim 14: The method according to claim **1,** for use with a criterion stored in the first server, wherein the selecting is according to, or based on, the criterion.

Claim: 20: The method according to claim **1,** wherein the first client device is addressed over the Internet using a first Internet Protocol (IP) address, and the method further comprising storing, in the first server, the first IP address.

Claim 21: The method according to claim **1,** wherein the first server is a Transmission Control Protocol/Internet Protocol (TCP/IP) server that communicates over the Internet with client devices based on, according to, or using, TCP/IP

protocol or connection.

Claim 22:  The method according to claim **1,** wherein the first server communicates over the Internet based on, or according to, one out of UDP, DNS, TCP, FTP, POP#, SMTP, or SQL standards.

Claim 25: The method according to claim **1,** wherein the sending of the first content identifier to the web server comprises using the selected IP address as a source address.

Claim 27: The method according to claim **1,** wherein the first client device is identified by a first Internet Protocol (IP) address, Media Access Control (MAC) address, or a hostname.

Claim 28: The method according to claim **1,** further comprising storing, operating, or using, by the first server, a server operating system.

Claim 29: The method according to claim **1,** for use with a software application that includes computer instructions that, when executed by a computer processor, cause the processor to perform the steps of the claim **1.**

Claim 30: The method according to claim **1,** wherein the web server comprises a web server that is a Hypertext Transfer Protocol (HTTP) server responding to HTTP requests and addressed in the Internet using a web server Internet Protocol (IP) address.

89.   Defendant has actual notice of the '511 Patent since at least the filing of this complaint and know at least from this complaint that implementation of the Accused Instrumentalities using data servers in the United States infringe at least claims 1, 14, 20, 21, 22, 25, 27, 28, 29, and 30 of the '511 Patent.

90.     Upon information and belief Defendant sold, offered to sell, used, tested, and imported and continues to sell, offer to sell, use, test, and import the Accused Instrumentalities into the United States.  Defendant imports their software, which is implemented on servers located in the United States. Defendant's Server Software in the Accused Instrumentalities implements the steps of at least the above claims of the Asserted Patent and is not used for other commercial services or products.   Defendant provides the data proxy center service of the Accused Instrumentalities to their customers with the knowledge and intent that the customers' implementation of the service using residential proxies located in the U.S. would infringe the '511 Patent.

91.     Defendant has been and is now infringing at least directly, indirectly and/or contributorily, one or more claims including at least claims 1, 14, 20, 21, 22, 25, 27, 28, 29, and 30 of the '511 Patent, both literally and/or under the doctrine of equivalents, by implementing the Accused Instrumentalities using data center proxy servers located in the United States without authority and/or license from Luminati, and Defendants are liable to Luminati under 35 U.S.C. § 271 *et seq*., including but not limited to under Sections 271(a), (b), (c) and/or (g).  On information and belief, at least since the service of this Complaint, Defendant has been aware of the Asserted Patents yet has continued to infringe and cause its servers in the United States under Defendant's control to infringe claims of the Asserted Patents and has induced infringement.  On further information and belief, Defendant has developed, used, offered to sell and/or sold within the United States and imported into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or

commodity of commerce suitable for substantial noninfringing use.  On further information and belief, Defendant also imports and sells as well as causing others to use within the United States a product which is made by a process patented in the United States whereby the importation, offer to sell, sale, and/or use of the product occurs during the term of such process patent.  Such products may include for example, the set of results sent to customers in the United States as created and assembled by the patented methods of the Asserted Patents.

92.    As a result of Defendant's infringement of the '511 Patent, Luminati has suffered and continues to suffer damages.  Thus, Luminati is entitled to recover from Defendant the damages Luminati sustained as a result of Defendant's wrongful and infringing acts in an amount no less than its lost profits and/or a reasonable royalty, together with interest and costs fixed by this Court together with increased damages up to three times under 35 U.S.C. § 284.

93.    Luminati has suffered damage because of the infringing activities of Defendant, its officers, agents, servants, employees, associates, partners, and other persons who are in active concert or participation therewith, and Luminati will continue to suffer irreparable harm for which there is no adequate remedy at law unless Defendant's infringing activities are preliminarily and permanently enjoined by this Court. Luminati practices the Asserted Patents. Non-exclusive examples of damage incurred by Luminati as a result of Defendants' infringement include, but are not limited to, lost profits and/or a reasonable royalty, loss of market share, lowered prices and the inability of Luminati to obtain the revenues and profits it would have been able to obtain but for the infringement, lost sales in other services when customers did not purchase Data Center proxy services from Luminati as a result of the infringement, and loss of convoyed sales of other related services that Luminati would have sold but for the infringement.

94.      Defendant's infringement of the '511 Patent is and continues to be deliberate and willful because Defendant was and is on notice of the '511 Patent at least as early as this Complaint, yet Defendants continues to infringe the '511 Patent.  This case should be deemed an exceptional case under 35 U.S.C. § 285, and if so, Luminati is entitled to recover its attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Luminati respectfully requests that this Court enter:

A.  A judgment in favor of Luminati that the Defendant has and is infringing the Asserted Patents;

B.  A judgment declaring Defendant's infringement to be willful;

C.  A judgment declaring that this case is exceptional within the meaning of 35 U.S.C. § 285;

D.  A permanent injunction enjoining Defendant, its officers, directors, agents, servants, employees, associates, partners, customers, server owners and / or operators, and other persons who are in active concert or participation with BI Science, from infringing the Asserted Patents and/or such other equitable relief the Court determines is warranted in this case;

E.  A judgment and order requiring the Defendant to pay to Luminati its damages, enhanced damages, costs, expenses, prejudgment and post-judgment interest, and attorneys' fees, if applicable, for the Defendants' infringement of the Asserted Patents

as provided under 35 U.S.C. §284 and/or §285, and an accounting of ongoing post-judgment infringement; and

F.   Any and all other relief, at law or in equity that this Court deems just or proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Luminati hereby demands a trial by jury of all issues so triable.

Dated: December 6, 2019                    Respectfully submitted,

*/s/ Korula T. Cherian*

S. Calvin Capshaw
State Bar No. 03783900
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com

Korula T. Cherian
Robert Harkins
RuyakCherian LLP
1936 University Ave, Suite 350
Berkeley, CA  94702

Amadou Kilkenny Diaw
Corrine Saylor Davis
Ronald Wielkopolski
RuyakCherian LLP
1700 K St. NW, Suite 810
Washington, DC 20006

**ATTORNEYS FOR PLAINTIFF
LUMINATI NETWORKS LTD.**